UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

Wilton Reassurance Life Company of New York,

                Plaintiff,

v.

Silver Point Life, LLC; Mr. Javier Gomez,

                Defendants.

Case No. 3:13-cv-1111

## COMPLAINT FOR INTERPLEADER

Plaintiff, Wilton Reassurance Life Company of New York ("Wilton Re"), by and through its attorneys, hereby files this Complaint for Interpleader ("Complaint") pursuant to 28 U.S.C. § 1335 against Defendants, Silver Point Life, LLC ("Silver Point") and Mr. Javier Gomez ("Mr. Gomez"), and in support thereof avers as follows:

### PARTIES

1.    Plaintiff, Wilton Re, is a corporation organized and existing under the laws of the State of New York, with its principal place of business located in Wilton, Connecticut. For diversity purposes, Wilton Re is a citizen of the State of Connecticut and the State of New York. Plaintiff is the successor of the North American Company for Life and Health Insurance of New

York ("NANY"), the insurer that issued the $300,000 life policy insuring the life of Peter Kusulas bearing Policy No. LN00798710 (the "Policy"), which is the subject of this action.[1]

2.   Upon information and belief, Defendant, Silver Point, is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 2 Greenwich Plaza, 1st Floor, Greenwich, Connecticut 06830. For diversity purposes, Silver Point is a citizen of the State of Connecticut and the State of Delaware.

3.   Upon information and belief, Defendant, Mr. Gomez, is a citizen of Columbia and resides at AV 30 DE Agosto No. 87-290, Pereria, Columbia.

## JURISDICTION AND VENUE

4.   This is an action for interpleader relief pursuant to 28 U.S.C. §§ 1335, 1397, 2361, and 1655. Wilton Re is a disinterested stakeholder of the Policy, and Silver Point and Mr. Gomez have asserted conflicting and competing claims of ownership to the Policy. Wilton Re is prepared to deposit the Policy into the registry of the Court or, with the consent of the Defendants and the Court, hold and administer the Policy pending a final adjudication of the conflicting claims of ownership thereto.

---

[1]   On or about September 29, 2006, Wilton Re's parent company purchased several insurers, including NANY, and merged them to create Wilton Re.

2

5.   This Court has original jurisdiction pursuant to 28 U.S.C. § 1335 because Wilton Re is in possession of property with a value in excess of Five Hundred Dollars ($500) and the Defendants, who have asserted competing claims of ownership of the Policy, are of diverse citizenship as defined in 28 U.S.C. § 1332.

6.   The Defendants are subject to the jurisdiction and process of this Court. With regard to Mr. Gomez, 28 U.S.C. § 1655 authorizes the Court to exercise personal jurisdiction over foreign defendants and to order Mr. Gomez to appear, plead, and set up any claims or defenses with respect to the Policy to be deposited into this Court.

7.   Venue is proper in this Court pursuant to 28 U.S.C. § 1397 in that at least one of the Defendants resides within this district, and another is a non-resident of the United States and, therefore, may be sued in any judicial district.

## BACKGROUND

**A.   Issuance of the Policy and Transfer of the Policy to Mr. Gomez**

8.   On or about January 28, 1998, NANY issued the Policy on the life of Mr. Kusulas (the "Insured"). The named owner and beneficiary of the Policy was Micro Tool & Fabricating Inc. ("Micro Tool"), which, upon information and belief, was the Insured's employer at the time.

9.   Micro Tool remained the record owner and beneficiary of the Policy until transferring ownership to the Insured on February 12, 1998. Immediately thereafter, on

3

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

February 13, 1998, the Insured submitted change of ownership and beneficiary requests to NANY, seeking to designate the Peter Kusulas Irrevocable Trust (the "Kusulas Trust") as the owner and beneficiary of the Policy. NANY acknowledged and recorded the requests on March 23, 1998, thereby accepting the change of ownership.

10. Upon information and belief, Mr. Gomez purchased the Policy from the Kusulas Trust in or around September 2001.

11. On or around September 18, 2001, the trustees of the Kusulas Trust submitted a change of ownership and beneficiary form to NANY, designating Mr. Gomez as the owner and beneficiary of the Policy. NANY wrote to Mr. Gomez on October 3, 2001, acknowledging and thereby accepting the change of ownership and beneficiary request.

12. In letters to NANY, dated September 25, 2001 and September 27, 2001, Mr. Gomez informed NANY that he had contracted with Viatical Services, Inc. ("VSI") to act as his third-party administrator, and authorized NANY to direct all forms, requests, and questions relating to the Policy to VSI.

13. On or around January 31, 2003, Wilton Re received a check from Anthony M. Livoti Jr., c/o VSI, in the amount of $4,000 as premium payment for the Policy.

14. On or around January 28, 2004, Wilton Re received a check from Anthony M. Livoti Jr., c/o VSI, in the amount of $5,338 as premium payment for the Policy.

4

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

### B. VSI, Viatical Benefactor, and Mutual Benefits Receivership

15. Upon information and belief, in May 2004, a receiver, Robert Martinez (the "Receiver") was appointed in the United States District Court for the Southern District of Florida, and authorized to take custody of any assets in the possession of Mutual Benefits Corp., Viatical Benefactors, Inc., and VSI.

16. Upon information and belief, the Receiver believed that the Policy belonged in the received estate.

17. However, Wilton Re has no record of Mr. Gomez assigning his interest in the Policy or authorizing a change of ownership or beneficiary request naming VSI, Mutual Benefits Corp., Viatical Benefactors, Inc., or the Receiver as the owner or beneficiary of the Policy.

18. On or around January 13, 2005, Wilton Re received a premium check from Anthony M. Livoti Jr., c/o VSI, in the amount of $5,338 as premium payment for the Policy.

19. Upon information and belief, on or around July 20, 2006, Wilton Re received a premium payment in the amount of $5,338 from either Mr. Gomez or from VSI.

20. Upon information and belief, on or around February 1, 2007, Wilton Re received a premium payment in the amount of $5,338 from either Mr. Gomez or from VSI.

21. On or around March 9, 2008, the Receiver submitted a change of ownership form to Wilton Re, seeking to change the owner/beneficiary to the Receiver. This change of

ownership form appeared to list the Receiver as both the current owner and the new owner, and was executed by the Receiver as such.[2]

22.  A subsequent form changing the owner/beneficiary was submitted by the Receiver on or around March 10, 2008, this time purporting to name Silver Point as the new owner/beneficiary.

23.  On or around March 28, 2008, Wilton Re received a premium check from Mr. Gomez in the amount of $5,338.

24.  On April 9, 2008, Wilton Re wrote to Silver Point acknowledging the change of ownership and beneficiary.[3]

**D.   Competing Claims of Ownership of the Policy**

25.  On January 22, 2009, Wilton Re received a letter from Mr. Gomez, asserting that (i) he was the rightful owner of the Policy, (ii) the change of ownership to Silver Point was invalid because he never authorized any change of ownership or change of beneficiary, and (iii) he had paid the premiums on the Policy since 2002.

---

[2] These same change of beneficiary/owner forms had previously been submitted to NANY a month or so earlier, on or around February 10, 2008. On February 25, 2008, Asset Servicing Group ("ASG"), the purported third party agent for Silver Point, requested that NANY process the change requests and attached a court order from the Receivership action. That order, dated September 26, 2007, purportedly authorized the sale of the Policy to Silver Point. As noted in Paragraph 21 above, the forms were re-submitted on March 9, 2008.

[3] Shortly after confirming the change of ownership, Mr. Gomez – the owner of record – sent Wilton Re a letter stating that he had not authorized this change of ownership. As explained below, Wilton notified Silver Point that the March 2008 changes were void because the owner of record did not authorize them.

6

*Rome McGuigan, P.C.*  •  *Attorneys at Law*
One State Street  •  Hartford, Connecticut 06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

26.     On or around April 2, 2009, Wilton Re advised Silver Point that because it never received authorization from Mr. Gomez – the owner of record at the time ownership was purportedly transferred to Silver Point – the ownership and beneficiary change to Silver Point was void.

27.     On or around April 16, 2009, Wilton Re received a premium check from Mr. Gomez in the amount of $5,338. In Mr. Gomez's accompanying cover letter, he requested that Wilton Re provide him with a certificate of ownership for the Policy. On or around April 27, 2009, Wilton Re sent Mr. Gomez a certificate of insurance.

28.     On July 9, 2009, general counsel for ASG, sent a letter to Wilton Re asserting that Silver Point purchased the Policy from the Receiver pursuant to a court-approved sale on September 26, 2007. Counsel's letter asserted that the lack of Mr. Gomez's authorization was irrelevant due to the court-approved sale of the Policy, and further demanded that Wilton Re comply with the sale order and recognize Silver Point as the owner and beneficiary of the Policy.

29.     On or around January 29, 2010, Wilton Re received a premium check from Mr. Gomez in the amount of $5,338.

30.     On or around January 21, 2011, ASG requested from Wilton Re an illustration of the Policy on behalf of Silver Point. On or around January 26, 2011, Wilton Re denied this

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

request and explained that prior to obtaining information about the Policy, Silver Point must first obtain an authorization from Mr. Gomez, as the owner of record.

31.  On or around January 25, 2011, Wilton Re received a premium check from Mr. Gomez in the amount of $5,338.

32.  On or around March 7, 2011, ASG again requested an illustration of the Policy on behalf of Silver Point (as the purported owner), but just as it previously had done, Wilton Re, on March 9, 2011, denied this request and explained that prior to obtaining information about the Policy, Silver Point must obtain an authorization from Mr. Gomez, as the owner of record.

33.  Upon information and belief, on or around April 6, 2011, Silver Point requested that Wilton Re update its records to reflect that Silver Point was the proper owner and beneficiary of the Policy.  On or around April 7, 2011, Wilton Re denied the request, and directed Silver Point to Wilton Re's aforementioned April 2, 2009 letter informing Silver Point that the ownership and beneficiary change to Silver Point was void.

34.  On or around June 1, 2011, Silver Point again requested that Wilton Re update its records to reflect that Silver Point was the proper owner and beneficiary of the Policy, and sought an annual statement concerning the Policy.  On June 8, 2011, Wilton Re sent a letter to Silver Point, denying its request for an annual statement on the basis that its records did not reflect Silver Point as the owner of the Policy.

8

*Rome McGuigan, P.C.*  •  *Attorneys at Law*
One State Street  •  Hartford, Connecticut 06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

35. On or around October 14, 2011, general counsel for ASG sent a letter to Wilton Re, contesting Wilton Re's April 2, 2009 letter and asserting that Silver Point purchased the Policy from the Receiver pursuant to a court-approved sale on September 26, 2007. ASG demanded that Wilton Re comply with the sale order and recognize Silver Point as the owner and beneficiary. Upon information and belief, Wilton Re has subsequently explained to ASG and Silver Point on numerous occasions that Silver Point is not the owner of record and that Mr. Gomez – who is the owner of record – contests Silver Point's claim of ownership.

36. On or around February 6, 2012, Wilton Re received a premium check from Mr. Gomez in the amount of $5,338.

37. On or around May 4, 2012, Silver Point placed a telephone call to Wilton Re and requested an annual statement for the Policy. Upon information and belief, Wilton Re informed Silver Point that it was not the owner of record and thus could not release this information.

38. On or around May 31, 2012, CPS Administrators, Inc. submitted an authorization form purportedly executed by Silver Point (as purported owner of the Policy) to act as its third-party administrator and requested that Wilton Re provide CPS with data about the Policy. In response to this request, Wilton Re provided CPS with the Policy information requested.

39. On or around August 14, 2012, Silver Point submitted another change of ownership and beneficiary form, seeking to designate itself as the owner and beneficiary of the

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Policy. Silver Point also attached a power of attorney granted by the Insured – who no longer had any interest in the Policy – purportedly authorizing Silver Point to take ownership of the Policy.

40. Upon information and belief, as a result of Silver Point's numerous change of ownership requests, change of address requests, and its claim to ownership of the Policy, Mr. Gomez sent a letter to Wilton Re on September 13, 2012, asserting that he was the owner of the Policy and that had not requested any change of ownership, address, or beneficiary. Mr. Gomez asserted that someone was attempting to "steal this policy from me."

41. On or around January 28, 2013, Wilton Re's systems generated an annual Policy statement. The statement was directed to Mr. Gomez as the owner of record. The address in Wilton Re's system when the statement generated was Silver Point's.

## COUNT I: INTERPLEADER

42. Wilton Re incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein at length.

43. Based on the foregoing, there is presently an actual, justiciable controversy between and among the Defendants as to their respective rights to the Policy.

44. Wilton Re is an innocent stakeholder and claims no title or interest in the Policy.

45. Due to uncertainty regarding the proper owner of the Policy, Wilton Re seeks a judicial resolution of the conflicting claims of the Defendants.

46. Unless potentially adverse and conflicting claims to the Policy are resolved in a single proceeding pursuant to an appropriate court order, Wilton Re is subject to multiple litigation and is at a substantial risk of suffering multiple liability and/or inconsistent rulings as to its obligations under the Policy.

47. Wilton Re is now seeking, by way of this interpleader claim, certainty regarding the rightful owner of the Policy.

48. Wilton Re is prepared to deposit the Policy into Court, or to deliver it to a person designated by the Court, pending the resolution of this action, and receipt of a final non-appealable court order in this action.

49. Wilton Re is entitled to reasonable attorneys' fees because it is a disinterested stakeholder in this action.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

**WHEREFORE**, Wilton Re respectfully requests that this Court:

(1) order Mr. Gomez and Silver Point to interplead their respective claims to the ownership of the Policy without further involvement of Wilton Re;

(2) direct Wilton Re to hold the Policy until further order of the Court, or to deposit the Policy into the registry of the Court, pending a final judgment by the Court as to the proper owner of the Policy and the expiration of any appeal period related thereto;

(3) direct and declare the respective rights of Mr. Gomez and Silver Point to the ownership of the Policy;

(4) discharge Wilton Re from any and all liability in connection with this litigation, except for the obligation to honor a final non-appealable order from this Court with respect to the ownership of the Policy;

(5) enjoin and restrain Silver Point and Mr. Gomez from commencing or further prosecuting any other proceedings in any state or United States court against Wilton Re on account of the Policy until this action is concluded;

(6) award Wilton Re its costs and attorneys' fees; and

(7) grant any such other and further relief as this Court deems appropriate.

Respectfully submitted,

Wilton Reassurance Life Company of New York

Dated: August 2, 2013

_____
Jeffrey L. Ment (ct12299)
Rome McGuigan, PC
One State Street
Hartford, CT 06103
Tel: (860) 549-1000
Fax: (860) 742-3921
Email: jment@rms-law.com

Thomas S. Downie, Jr. (*Pro Hac Vice* to be filed)
Stephen A. Serfass (*Pro Hac Vice* to be filed)
M. Andrew Campanelli (*Pro Hac Vice* to be filed)
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
(215) 988-2700
thomas.downie@dbr.com
stephen.serfass@dbr.com
andrew.campanelli@dbr.com

*Attorneys for Plaintiff,*
*Wilton Reassurance Life Company of New York*